IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFFREY LEZARK,                      )
                                     )
                                     )     2:20-CV-00403-CCW
            Plaintiff,               )
                                     )
      v.                             )
                                     )
I.C. SYSTEM, INC.,                   )
                                     )
                                     )
            Defendant.               )

**MEMORANDUM OPINION**

Before the Court is (1) Plaintiff Jeffrey Lezark's ("Mr. Lezark") Motion for Partial

Summary Judgment, *see* ECF No. 42, and (2) Defendant I.C. System, Inc.'s ("ICS") Motion for

Judgment on the Pleadings.  *See* ECF No. 46.  Because the Court concludes that the communication

at issue here is not "false, deceptive, or misleading" under the Fair Debt Collection Practices Act,

15 U.S.C. § 1692, *et seq.* ("FDCPA")*,* ICS's Motion will be GRANTED.  As such, Mr. Lezark's

Motion will be DENIED as MOOT.

I.    **Background**

      A.    **Procedural History**

      In his operative, Amended Complaint, Mr. Lezark alleges, on behalf of himself and others

similarly situated, that ICS violated the FDCPA by sending communications to debtors that are

"false, deceptive or misleading representations or means in connection with the collection of a

debt, in violation of 15 U.S.C. § 1692e;  and/or unfair or unconscionable means to collect or

attempt to collect any debt, in violation of 15 U.S.C. § 1692f."  ECF No. 36 ¶¶ 67, 69.  Following

the close of discovery, Mr. Lezark filed a Motion for Partial Summary Judgment and ICS filed a

Motion for Judgment on the Pleadings.  *See* ECF Nos. 42 & 46.  Both Motions are fully briefed and ripe for disposition.

      **B.**      **Relevant Factual Allegations**

      Because the Court concludes that the Amended Complaint does not state a claim on which relief can be granted, and so will grant ICS's Motion —specifically because the allegedly unlawful communications at issue here do not run afoul of the FDCPA—the Court only considers the facts as alleged in the Amended Complaint.

      Mr. Lezark alleges that he incurred a personal medical debt to non-party Tri-State Ortho and Sports Medicine Inc. ("Tri-State").  *See* ECF No. 36 ¶¶ 35–36.  At some point, Tri-State contracted with ICS to collect the debt.  *See id.* ¶ 38.  On April 1, 2019, ICS sent Mr. Lezark a so-called "540 Letter."  *See id.* ¶ 40.  The 540 Letter is the second form collection letter that ICS sends to debtors.  *See id.* ¶¶ 13, 16.  The first, the "510 Letter," informs the debtor that ICS has been retained to pursue debt collection efforts, among other things.  *See* ECF No. 36 ¶¶ 13–14. The 540 Letter, as relevant here, read as follows:

> We have contacted you several times regarding the balance stated in the account summary, which remains unpaid.

> The account information is scheduled to be reported to credit reporting agencies. You have the right to inspect those credit files in accordance with federal law.

> **If you fail to contact us to discuss payment of this account, our client has authorized us to pursue additional remedies to recover the balance due, including referring the account to an attorney.**

> Please pay this account or contact us to make payment arrangements.

> If you will be receiving a tax refund and would like to use it to pay your account, please call us to make payment arrangements.

> We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

> This does not contain a complete list of the rights consumers have under Federal, State, or Local laws.

ECF NO. 46-1 (emphasis added);  *see also* ECF No. 36 ¶ 42 (quoting 540 Letter).[1]

According to the Amended Complaint, if, after receiving a 540 Letter, a debtor failed to pay, ICS's collection agreement with Tri-State authorized ICS to refer accounts to a so-called "non-litigation attorney referral" ("NLAR") vendor.  *See id.* ¶¶ 18–19, 39.  The NLAR vendor is authorized to send letters and make phone calls, but is not authorized to take legal action.  *See id.* ¶¶ 21–22.  If the debtor does not pay during the time the account is with the NLAR vendor, the account is then returned to ICS.  *See id.* ¶ 25.  ICS then undertakes its own analysis to determine whether the account can be referred for litigation.  *See id.* ¶¶ 27–28.  If ICS determines an account can be referred for litigation, ICS must then seek authorization from Tri-State to refer the account to an attorney for litigation.  *See id.* ¶¶ 26, 28.

If Tri-State authorizes litigation, and remits payment for court costs, ICS then refers the account to an attorney for litigation.  *See id.* ¶ 29.  The litigation attorney undertakes his or her own independent assessment as to whether to file suit.  *See id.* ¶ 32.  If the attorney decides to sue, he or she would first send a demand letter to the debtor.  *See id.* ¶ 33.  If the debtor fails to pay in response to the demand letter, only then would the attorney file a lawsuit.  *See id.* ¶ 34.  Mr. Lezark alleges in the Amended Complaint that ICS "rarely (if ever)" receives authorization from Tri-State to refer accounts for litigation, and notes that "Tri-State, over the past decade, has not filed a lawsuit in any Allegheny County court on a patient-related medical debt."  *See id.* ¶¶ 49–50.

Mr. Lezark alleges in the Amended Complaint that the above-bolded portion of the 540 Letter is "false, deceptive, or misleading," in violation of 15 U.S.C. § 1692e, because the 540 Letter "implies that legal action is possible when legal action is not possible and/or intended."  *Id.*

---

[1] Although not attached to the Amended Complaint, Mr. Lezark's claims explicitly rely on and incorporate the 540 Letter;  therefore, the Court may consider it in resolving ICS's Motion.  *See King v. Baldino*, 648 F. Supp. 2d 609, 616 (D. Del. 2009) (noting, in relevant part, that in resolving a Rule 12(c) motion, "[a] court may, however, also consider 'matters incorporated by reference or integral to the claim.'") (quoting *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (cleaned up)).

¶¶ 44, 69.  Alternatively, Mr. Lezark claims that the 540 Letter, in violation of 15 U.S.C. § 1692f, constitutes an "unfair or unconscionable means to collect or attempt to collect any debt."  *Id.* ¶ 69.

## II.     Standard of Review – Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "[J]udgment on the pleadings is only appropriate in favor of the moving party when that party 'clearly establishes that no material issue of fact remains to be resolved' such that the party is 'entitled to judgment as a matter of law.'"  *Consumer Fin. Prot. Bureau v. Navient Corp.*, 523 F. Supp. 3d 681, 686 (M.D. Pa. 2021) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).  Where, as here, the movant contends that the operative complaint fails to state a claim on which relief can be granted, the standard applied to a Rule 12(c) motion is functionally the same as that applied to a motion under Rule 12(b)(6).  *See Christy v. We the People Forms & Serv. Ctrs., United States, Inc.,* 213 F.R.D. 235, 238 (D.N.J. 2003) (noting that the difference in the standard applied to Rule 12(c) and Rule 12(b)(6) motions is "merely semantic");  *see also Spruill v. Gillis,* 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards" between Rule 12(b)(6) and Rule 12(c)).

As such, the Court must view the facts alleged in the complaint and "the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Hoover v. Monarch Recovery Mgmt.*, 888 F. Supp. 2d 589, 593 (E.D. Pa. 2012) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).  In resolving a Rule 12(c) motion, the Court "may not 'consider matters extraneous to the pleadings.'"  *Dovale v. Marketsource, Inc*., Civil Action No. 05-2872 (FLW), 2006 U.S. Dist. LEXIS 57679, at *12 (D.N.J. Aug. 17, 2006) (quoting *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir.1997).  That said, courts may consider "(1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents

that are integral to or explicitly relied upon in the complaint." *Id.* at *12–13 (citing *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004)).

## III.   Discussion

### A.     The FDCPA and the "Least Sophisticated Debtor" Standard

To succeed on his FDCPA claim, Mr. Lezark must establish that "'(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *Daniels v. Solomon & Solomon P.C.*, 751 F. App'x 254, 256 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).  Only the fourth prong, for purposes of ICS's Motion, is disputed.  *See, generally,* ECF No. 47 (challenging only whether the 540 Letter was false, deceptive, or misleading).

Mr. Lezark's claims that the 540 Letter violates the FDCPA rest primarily on § 1692e, "which prohibits the use of 'false, deceptive, or misleading representation or means in the connection with the collection of any debt.'" *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (quoting 15 U.S.C. § 1692e).  Section 1692e "set[s] forth a non-exhaustive list of practices that fall within its ban," *id.*, including, as relevant here, subsection 1692e(5) (which prohibits "[t]he threat to take any action that cannot be legally taken or that is not intended to be taken") and/or subsection 1692e(10) (which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer").  That said, "[b]ecause the list of the sixteen subsections is non-exhaustive, a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of section 1692e even if it does not fall within any of the subsections." *Lesher*, 650 F.3d at 997 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

"Because the FDCPA is a remedial statute…we construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted). Accordingly, "lender-debtor communications potentially giving rise to claims under the FDCPA…[are] analyzed from the perspective of the least sophisticated debtor." *Id.* at 454. "This standard aims to 'protect[] the gullible as well as the shrewd.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015)). Applying this standard "requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown*, 464 F.3d at 454 (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)).

The least sophisticated debtor standard is objective, *see Tatis*, 882 F.3d at 427, and, although it sets a lower bar than one based on a "reasonable debtor," it nevertheless "'preserv[es] a quotient of reasonableness and presume[s] a basic level of understanding and willingness to read with care.'" *Jensen*, 791 F.3d at 418 (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "Thus, although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices.'" *Quadramed*, 225 F.3d at 354 (quoting *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996)). Finally, although it appears that the Third Circuit has not definitively ruled on whether application of the least sophisticated consumer standard to communications that allegedly violate 15 U.S.C. § 1692e is a question of law or a question of fact, the prevailing view, including among district courts of this Circuit, appears to be that it is a question of law. *See Balon v. Enhanced Recovery Co.,* 264 F. Supp. 3d 597, 614–16 (M.D. Pa. 2017) (collecting cases); *see also Szczurek v. Prof'l Mgmt., Inc.*,

59 F. Supp. 3d 721, 728 (E.D. Pa. 2014) ("The question of whether the least sophisticated debtor would be confused or misled by a debt collector's notice is a question of law for us to decide.").

### B.  The Court Will Resolve ICS's Motion on the Merits Without Converting It to a Motion for Summary Judgment

Before reaching the merits of ICS's Motion, two procedural issues must be resolved.  First, ICS argues that Mr. Lezark, by failing to respond directly to ICS's arguments, waived his claim that the 540 Letter falsely threatens litigation, and, by advancing a theory not pled in the Amended Complaint—i.e., that the 540 Letter implies an attorney "that acts like a real attorney," *see, e.g.,* ECF No. 50 at 5–6—has impermissibly attempted to amend his pleadings through briefing.  *See* ECF No. 52 at 3–5.  ICS maintains that this failure to respond plus advancement of an unpled theory requires dismissal.  *Id.*  Second, Mr. Lezark contends that, because discovery is closed, the Court should treat ICS's Motion as one for summary judgment.  *See* ECF No. 50 at 5.  ICS opposes converting its Motion to a motion for summary judgment under Rule 12(d).  *See* ECF No. 52 at 5.

Taking these arguments in reverse order, the Court first concludes that it will not convert ICS's Motion under Rule 12(c) into one under Rule 56.  Under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  But, as ICS points out in its Reply, in briefing ICS's Motion, only Mr. Lezark submitted evidence or materials outside of the pleadings.  *See id.*  "Conversion to summary judgment is generally not appropriate where, as here, only the nonmoving party has introduced evidentiary exhibits in response to a … motion for judgment on the pleadings."  *Two-Way Media Ltd. v. Comcast Cable Communs.*, LLC, Civil Action No. 14-1006-RGA, 2016 U.S. Dist. LEXIS 107478, at *11 (D. Del. Aug. 15, 2016) (citing *Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, 2015 WL 1943826, at *4 (D. Mass. Apr. 28, 2015) and *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 401 F. Supp. 2d 1120, 1122

(D. Nev. 2005)) *aff'd,* 874 F.3d 1329 (Fed. Cir. 2017).   Furthermore, because ICS's Motion contends that Mr. Lezark's claims fail as a matter of law—that is, the claims are not viable given the facts alleged in the Amended Complaint—the evidence submitted by Mr. Lezark is not necessary to resolving ICS's Motion.   Therefore, the Court (1) will not consider the evidence submitted by Mr. Lezark for the purpose of resolving ICS's Motion and (2) will not convert ICS's Motion to a motion for summary judgment.   *See Allen v. Eckhard,* 2018 U.S. Dist. LEXIS 77010, at *4 (M.D. Pa. May 8, 2018) ("The Court will not consider Plaintiff's attached exhibits to his brief in opposition as they are not part of the pleadings and not necessary in resolving the motion for judgment on the pleadings.").

Next, ICS argues that the 540 Letter, particularly the sentence "[i]f you fail to contact us to discuss payment of this account, our client has authorized us to pursue additional remedies to recover the balance due, including referring the account to an attorney," is not false, deceptive, or misleading because "merely indicating the account could be referred to an attorney does not imply litigation is imminent or threaten to file suit."   ECF No. 47 at 3.   In his opposition, Mr. Lezark contends that the 540 Letter is misleading because the least sophisticated debtor, reading that ICS has authorization "to pursue additional remedies," including referring an account to "an attorney," could be led to believe that "an account referral to an attorney that acts as a real attorney is possible, and that legal action is possible as a result, because lawyers that act like real lawyers determine whether to take (or actually take) legal action against consumers."   ECF No. 50 at 2.

This is a slightly different theory than the one Mr. Lezark advances in his Amended Complaint or that he articulates in support of his own Motion for Partial Summary Judgment.   *See* ECF No. 45 at 7 ("Here, the 540 Letter is deceptive because it can be reasonably read to reach the inaccurate conclusion that legal action is possible if a consumer fails to pay.").   ICS maintains that

Mr. Lezark's failure to squarely address its arguments in support of ICS's Motion means that Plaintiff has abandoned the theory that the 540 Letter misleadingly threatens litigation. *See* ECF No. 52 at 3–4. Furthermore, because the "attorney that acts as a real attorney" theory was not articulated in the Amended Complaint ICS argues that "the Court should reject this improper attempt to amend and enter judgment on the pleadings" in favor of ICS. ECF No. 52 at 5.

Although "'[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss,'" *Hughes v. UPS*, 639 F. App'x 99, 104 (3d Cir. 2016) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988), the Court disagrees with ICS, since both of Mr. Lezark's articulations of his theory of this case rest on the proposition that the 540 Letter is impermissibly false, misleading, or deceptive. True, the version of this claim stated in opposition to ICS's Motion layers on the additional postulate—not laid out in the Amended Complaint—that the least sophisticated debtor will necessarily read the word "attorney" as "attorney, acting like attorneys usually act," ECF No. 50 at 1, but this proposition is ultimately in service of the contention that the 540 Letter "implies legal action is possible when legal action is not possible and/or intended." ECF No. 36 ¶ 44. Because the Court concludes that the 540 Letter is not false, misleading, or deceptive under either proposed reading, we need not parse whether Mr. Lezark's argument in opposition to ICS's Motion represents an attempt to amend through the briefs, and will, instead, resolve ICS's Motion on its merits.

##### C.     The 540 Letter Does Not Violate the FDCPA

Turning now to the substance of the case, Mr. Lezark's claim that the 540 Letter violates the FDCPA's prohibition against false, deceptive, or misleading communications rests on the synthesis—and extension—of two opinions from the Third Circuit, *Brown* and *Lesher.* There are a few problems with this proposed synthesis, discussed below;  at bottom, however, it requires

reading out of the least sophisticated debtor standard the "quotient of reasonableness" and "basic level of understanding and willingness to read with care," *Jensen*, 791 at 418, that are necessary to that legal standard's careful balancing, on the one hand, of protections for debtors with, on the other, safeguarding debt collectors from "bizarre or idiosyncratic interpretations of collection notices." *Quadramed*, 225 F.3d at 354.

> In *Brown,* the collection letter at issue read, in relevant part, as follows:
>
> You are requested to contact the Recovery Unit of the Card Service Center … to discuss your account.
>
> Refusal to cooperate could result in a legal suit being filed for collection of the account.
>
> You now have five (5) days to make arrangements for payment of this account. Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue collection efforts.

*Brown*, 464 F.3d at 451–52.  The court in *Brown* concluded that this letter violated § 1692e because "it would be deceptive under the FDCPA for [defendant] to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before."  *Id.* at 455 (emphasis original).  The court noted that the letter "highlights two possible outcomes for debtors failing to respond within five days: the commencement of a lawsuit or the referral of the debt to [defendant's] attorney" and that, according to plaintiff's allegations, defendant never intended to file suit, never intended to refer plaintiff's case to its attorney, and, as a matter of course, defendant did not refer debts "to their attorney for prosecution" but instead only made referrals to another debt collector. *Id.*  Thus, the court concluded, "[u]pon reading the CSC Letter, the least sophisticated debtor might get the impression that litigation or referral to a CSC lawyer would be imminent if he or she did not respond within five days."  *Id.*

In *Lesher*, on the other hand, the court was presented with debt collection letters sent by a law firm on the law firm's letterhead, the first of which read:

Please be advised that your account, as referenced above, is being handled by this office.

We have been authorized to offer you the opportunity to settle this account with a lump sum payment, equal to 75% of the balance due—which is $9,080.52!

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.

If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

You are invited to visit our website www.lawofmnk.com to resolve this debt privately, or to write to us or to update your personal information.

*Lesher*, 650 F.3d at 995. The second letter "offers the choice of a six-month repayment plan or a settlement, and again instructs the reader to 'see reverse side for important information.'" *Id.* at 995–96. Both letters included a disclaimer, printed on their backs, informing the debtor in relevant part that, "[a]t this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Id.* The Third Circuit affirmed the district court's conclusion that the letters "violate[d] section 1692e's general prohibition against 'false, deceptive, or misleading' communications because they falsely impl[ied] that an attorney, acting as an attorney, is involved in collecting [plaintiff's] debt." *Id.* at 1003. The court concluded that "the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action." *Id.* Summarizing its decision, the court wrote:

As the Seventh Circuit observed in *Avila* [*v. Rubin*], "[a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." 84 F.3d at 229. For this reason, we believe that it was misleading and

deceptive for the Kay Law Firm to raise the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its legal capacity when it sent the letters.  We need not decide whether an attorney debt-collector who sends out a collection letter on attorney letterhead might, under appropriate circumstances, comply with the strictures of the Act by including language that makes clear that the attorney was not, at the time of the letter's transmission, acting in any legal capacity.  The only question before us today is whether the Kay Law Firm's January 11 and February 15, 2009 letters to Lesher comply with the Act. For the reasons set forth above, we hold that they do not.

*Id.*

Taking these cases together, Mr. Lezark contends that the 540 Letter is false, deceptive, or misleading under § 1692e because it raises the possibility of either (1) legal action, when legal action is not possible or intended (as alleged in the Amended Complaint), or (2) the debtor's account being referred to an attorney, when ICS knew that referral to an attorney "acting like a real attorney"—i.e. litigation referral—was, at best, highly unlikely (as argued in opposition to ICS's Motion).  *See* ECF No. 50 at 9–10, 12–13.  Both of these theories of liability hinge on the notion that "[a] debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"  *Brown*, 464 F.3d at 455 (quoting *Quadramed*, 225 F.3d at 354).  In short, Mr. Lezark argues that by using the phrases "referring the account to an attorney" and "additional remedies" the 540 Letter deceptively sends the message that the price of poker has the potential to go up.  *See* ECF No. 50 at 15.

As an initial matter, the letters at issue in *Brown* and *Lesher* diverge from the 540 Letter in important ways.  The *Brown* letter expressly threatens impending litigation or lawyer referral if the debtor fails to take immediate action, while the *Lesher* letters, because they were sent by a law firm, on law firm letterhead, "raise[d] the specter of potential legal action" by improperly implying that an attorney had meaningfully reviewed the debtor's file.  The 540 Letter crosses none of these lines:  it is clear that it was sent by a debt collector, not a law firm;  it creates no false sense of urgency;  it does not threaten litigation;  and it does not suggest or imply that a lawyer has, at the

time the letter was sent, meaningfully reviewed the debtor's account and/or arrived at any considered judgment as to whether to proceed with legal action.

Furthermore, the proposition that a debt collection letter may be misleading if it can be reasonably read to have more than one meaning, one of which is false, must be understood in light of the least sophisticated debtor standard. And, to properly apply that standard, any reading of a debt collection letter must "'preserv[e] a quotient of reasonableness and presum[e] a basic level of understanding and willingness to read with care.'" *Jensen*, 791 at 418 (citations omitted). Mr. Lezark's proposed reading of the 540 Letter fails to do so.

It is true that Third Circuit precedent makes clear that attorneys who act as debt collectors must take care when communicating with debtors to avoid creating a false or misleading impression regarding the degree of actual attorney review of or involvement with the debtor's account. *See Lesher*, 650 F.3d at 1003. The Third Circuit has also said that debt collectors may not falsely suggest that a letter is from an attorney. *See Rosenau v. Unifund Corp.,* 539 F.3d 218, 224 (3d Cir. 2008) ("[A] debt-collection letter can be deceptive under the FDCPA even if it only implies that it is from an attorney. It is possible that the phrase 'Legal Department' could imply to the least sophisticated debtor that a lawyer was involved in drafting or sending the letter.").

But the 540 Letter does none of these things. The 540 Letter plainly does not threaten litigation. Nor does it state or suggest that an attorney has, up to that point, been involved in any way in ICS's collection efforts. Nor does it state or suggest what an attorney to whom an account is referred might do. Even the least sophisticated debtor would know that, if he or she does not pay a debt, attorney involvement, up to and including litigation, is a possibility. And, the least sophisticated debtor would also know that even if an attorney does become involved, the end result may not be litigation. In short, whether Mr. Lezark frames the 540 Letter as directly implying

legal action was possible, or as implying "an attorney, acting like a real attorney" would get involved (and therefore indirectly implying legal action was possible), his proffered readings of the letter require additional inferential steps that the plain language of the 540 Letter does not permit.  Indeed, at most, the 540 Letter truthfully says to the least sophisticated debtor, "if you don't pay, you may be hearing from a lawyer."  Mr. Lezark's reading of the 540 Letter requires the kind of idiosyncratic gloss on a debt collection letter that the least sophisticated debtor standard prohibits, given that Mr. Lezark's reading conflates the bare prospect of attorney involvement and/or additional remedies with the belief that he would be sued.  *See* ECF No. 36 ¶ 43.

Indeed, the Third Circuit in *Daniels v. Solomon & Solomon P.C.*, 751 F. App'x 254 (3d Cir. 2018), rejected a similarly impermissible reading of a debt collection letter.  In *Daniels*, the plaintiff alleged that a letter sent on law firm letterhead "would confuse a debtor about whether [the defendant law firm] was acting as an attorney."  *Id.* at 257.  The court rejected this contention because "[u]nlike the cases [plaintiff] relies upon, the letter here bears no attorney's signature. It also contains a disclaimer stating that the communication was sent by a debt collector."  *Id.* Alternatively, plaintiff argued that the letter "threatens to take legal action that cannot legally be taken.  She contends that the language 'act now to resolve this problem!' implies that [defendant] could initiate a legal action against her even though it has no attorney licensed to practice law in Pennsylvania."  The court rejected this argument, too, finding instead that "[t]he statement 'act now to resolve this problem' is little more than a statement urging [plaintiff] to resolve an outstanding debt" because it "neither explicitly nor implicitly threatens legal action."  *Id.*  The court further found that "the letter is devoid of legal jargon and, other than the possible inference arising from the firm's name in the heading, makes no reference to legal action whatsoever."  *Id.*

The *Daniels* court's reasoning holds with similar force here, given that the 540 Letter was printed on ICS's letterhead rather than that of an attorney or law firm. In sum, then, the Court finds that the 540 Letter is not "false, deceptive, or misleading" within the meaning of § 1692e of the FDCPA, and Mr. Lezark's claim will be dismissed. Finally, ICS argues, and Mr. Lezark does not dispute, that his claim under § 1692f is duplicative of his claim under § 1692e. *See* ECF No. 47 at 2 n. 2 ("Plaintiff's § 1692f claim is based on the same allegations as [his] § 1692e claim and is therefore improper."). As such, to the extent Mr. Lezark has attempted to base a claim on § 1692f, such a claim will also be dismissed. *See Howard v. LVNV Funding, LLC,* No. 3:19-cv-93, 2020 U.S. Dist. LEXIS 34697, at *20 (W.D. Pa. Feb. 28, 2020) (Gibson, J.) ("Although Section 1692f and the other provisions of the FDCPA are not mutually exclusive, if a complaint does not identify any conduct in addition to that alleged to violate another provision, the complaint fails to state a claim under Section 1692f.") (citing *Strouse v. Enhanced Recovery Co*., 956 F. Supp. 2d 627, 637 (E.D. Pa. 2013)).

## IV.    Conclusion

For the foregoing reasons, Defendant I.C. System, Inc.'s Motion for Judgment on the Pleadings, ECF No. 46, will be granted and judgment will be entered in favor of Defendant. Accordingly, Plaintiff Jeffrey Lezark's Amended Complaint, ECF No. 36, will be dismissed and his Motion for Partial Summary Judgment, ECF No. 42, will be denied as moot.

DATED this 29th day of March, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

15

cc (via ECF email notification):

All Counsel of Record