IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFFREY LEZARK,

       Plaintiff,

    v.                                                                        2:20-CV-00403-CCW

I.C. SYSTEM, INC.,

       Defendant.

## OPINION AND ORDER

Before the Court is Plaintiff Jeffrey Lezark's Motion for Leave to File a Second Amended Complaint, ECF No. 78, which Defendant I.C. Systems, Inc. ("ICS") opposes, ECF No. 82. For the reasons that follow, the Court will **GRANT** the Motion.

## I.    Background

Mr. Lezark filed suit on March 20, 2020, asserting a single claim against ICS under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* ECF No. 1. As told in his first amended complaint, Mr. Lezark's claim arises from a collection letter that ICS sent to him regarding a medical debt that he owed to Tri-State Ortho and Sports Medicine. ECF No. 36 ¶¶ 35, 40. The allegedly offensive portion of the April 1, 2019 letter reads: "If you fail to contact us to discuss payment of this account, our client has authorized us to pursue additional remedies to recover the balance due, including referring the account to an attorney." *Id.* ¶¶ 17, 42. In his first amended complaint, Mr. Lezark alleges that this statement is "false, deceptive, and misleading," in violation of 15 U.S.C. § 1692e, or unfair or unconscionable, in violation of 15 U.S.C. § 1692f, because it "implies that legal action [against him by ICS] is possible when legal action is not possible and/or intended." ECF No. 36 ¶¶ 44, 69.

On May 26, 2021, after answering the first amended complaint and proceeding with discovery, ICS moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Mr. Lezark failed to state a claim under the FDCPA.  ECF No. 46;  ECF No. 47 at 1, 10.  At that time, ICS did not contest Mr. Lezark's standing to sue.  *See generally* ECF Nos. 47, 52.  The Court granted that motion, ruling that Mr. Lezark's FDCPA claim failed as a matter of law because the statement about referring his account to an attorney was not false, deceptive, or misleading under § 1692e, or unfair or unconscionable under § 1692f.  ECF No. 60 at 1.  Applying the "least sophisticated debtor" standard, the Court explained that the letter did not "threaten litigation," "state or suggest that an attorney has . . . been involved in . . . ICS's collection efforts," or "state or suggest what an attorney to whom an account is referred might do."  *Id.* at 13.  The Court entered judgment for ICS, ECF No. 62, and Mr. Lezark appealed, ECF No. 69.

Before the Third Circuit, ICS raised for the first time the issue of Mr. Lezark's standing to sue, citing the Supreme Court's decision *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which was issued after ICS filed its Rule 12(c) motion.  *See* ECF No. 80-1 at 4.  Mr. Lezark, in turn, insisted on appeal that the allegations in his operative complaint sufficiently supported his standing, but maintained that he could bolster his allegations with the facts that ICS' collection letter "made him feel overwhelmed and caused him to contact a lawyer to file for bankruptcy."  *Id.* The Third Circuit ultimately vacated this Court's order of dismissal and accompanying judgment, and remanded the case so that this Court could consider the standing issue in the first instance.  *Id.* at 6–7.  In doing so, the Third Circuit directed this Court to "give [Mr.] Lezark an opportunity to move for leave to amend his complaint to include additional allegations of" standing—although the parties dispute the import of this language.  *Id.*

2

Consistent with the Third Circuit's opinion, on remand, Mr. Lezark filed the instant Motion, along with a proposed Second Amended Complaint.  ECF Nos. 78, 79-1.  In the proposed Second Amended Complaint, Mr. Lezark would allege that the collection letter caused him to believe that "a lawsuit may be filed against him," further causing him to feel "overwhelmed."  ECF No. 79-2 ¶¶ 43, 45.  He would additionally allege that he "contacted an attorney for help" because he "could not afford to be sued at the time," and that the collection letter "helped push [him] to decide to file for bankruptcy."  *Id.* ¶¶ 46–48.  Finally, Mr. Lezark would allege that, although the letter did not cause him to suffer "monetary or pecuniary harm," it "denied [him] reliable information to make informed decisions about how to address his account."  *Id.* ¶ 49.  Because these allegations would, according to Mr. Lezark, demonstrate his standing to sue, he argues that the Court should grant him leave to amend.  ECF No. 79 at 1.

ICS filed an opposition, though it does not directly address whether Mr. Lezark's new allegations would be sufficient in terms of standing to sue.  Instead, ICS argues that this Court lacks jurisdiction to grant the Motion because the allegations in Mr. Lezark's original complaint are insufficient to establish standing and, therefore, the Court does not have the power to consider his Motion.  ECF No. 82 at 1.  Accordingly, and despite the Third Circuit's remand decision inviting Mr. Lezark to file a motion for leave to amend his complaint, ICS maintains that the only path forward is to dismiss the case without prejudice for lack of subject matter jurisdiction.  *Id.*  In his reply, Mr. Lezark argues that he sufficiently alleged standing in his original complaint but that, even if he had not, the Court would still have the authority to grant his Motion and allow him to file the Second Amended Complaint.  ECF No. 84 at 1–2.  With this Court's permission, ICS filed a sur-reply on April 28, 2023.  ECF No. 89.  Mr. Lezark's Motion is now ripe for adjudication.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 15(a), a district court should "freely give leave [to amend a pleading] when justice so requires."  Whether to grant a motion for leave to amend "generally falls within the District Court's discretion."  *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017).  And, "[g]enerally, Rule 15 motions should be granted."  *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).  "In determining whether leave to amend might reasonably be denied, courts are guided by the *Foman* factors, named for the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962)."  *Mullin*, 875 F.3d at 149.  The *Foman* factors are "not exhaustive," but include such relevant considerations as "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Id.*[1]

## III.    Discussion

To resolve Mr. Lezark's Motion, the Court must answer two questions.  First, does the Court have jurisdiction to rule on the Motion?  Second, has Mr. Lezark shown that leave to amend should be granted by sufficiently alleging standing?  Because the answer to both questions is "yes," the Court will grant Mr. Lezark leave to file his Second Amended Complaint.  Before explaining those answers, the Court begins with an overview of standing doctrine, which both questions implicate.

---

[1] When a party moves to amend a complaint pursuant to Rule 15(a) "after the deadline in a district court's scheduling order has passed," the party must show "good cause" under Rule 16(b)(4).  *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 370 n. 53 (3d Cir. 2020).  To the extent that rule applies here, to a case on a limited remand from the Third Circuit, the Court finds that good cause exists for the amendment for the reasons given below.

### A.     Article III Standing

Standing doctrine derives from the Constitution's limitation of the "judicial Power of the United States," in Article III, section 2, to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  This cases-or-controversies limitation means that federal courts "may resolve only 'a real controversy with real impacts on real persons.'" *TransUnion*, 141 S. Ct. at 2203 (quoting *Am. Legion v. Am. Humanist Assn.*, 139, S. Ct. 2067, 2103 (2019)).  Standing ensures that such "real controversy" exists by requiring that the plaintiff (1) has suffered an "injury in fact" (2) that is "fairly traceable" to the defendant's challenged conduct and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  If any of these elements is missing, then there is no case or controversy, and the court therefore lacks jurisdiction over the matter. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The doctrine serves a separation-of-powers purpose:  "By ensuring that a plaintiff has standing to sue, federal courts 'prevent the judicial process from being used to usurp the powers of the political branches.'" *United States v. Texas*, 143 S. Ct. 1964, 1969 (2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

The party invoking the court's jurisdiction bears the burden of establishing standing. *Spokeo*, 578 U.S. at 338.  And it must do so "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.  Thus, at the pleadings stage, a plaintiff must show that his allegations, taken as true and construed in his favor, plausibly allege each element of standing.  *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996); *Dipippa v. Union Sch. Dist.*, 819 F. Supp. 2d 435, 444 (W.D. Pa. 2011) (McVerry, J.).

**B.      The Court Has Jurisdiction to Rule on the Motion**

Despite the Third Circuit's instruction to allow Mr. Lezark an opportunity to move for leave to amend, ICS maintains that this Court lacks the jurisdiction to rule on Mr. Lezark's Motion because his original complaint fails to sufficiently allege standing.  The legal premise of ICS' argument is that "if a federal court issues an order—*any* order—without Article III jurisdiction, the order is void."  ECF No. 82 at 6.  From that premise, ICS reasons that "this [C]ourt must first determine whether" Mr. Lezark's original complaint "imbued [the Court] with Article III jurisdiction."  *Id.*  Because, ICS argues, Mr. Lezark insufficiently alleged standing in his original complaint, this Court lacks jurisdiction to even grant leave to amend and may only dismiss the complaint.  *Id.* at 6–11.  ICS' argument is logically unsound and contrary to binding precedent.  The Court has jurisdiction to consider Mr. Lezark's Motion, whether or not he properly alleged standing in his original complaint.

Initially, ICS' premise does not reasonably support its chosen conclusion.  To be sure, as ICS notes, "jurisdiction is a fundamental pre-requisite to the exercise of judicial power."  ECF No. 82 at 4 (quoting *Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*, 441 F. App'x 822, 824 (3d Cir. 2011)).  And it is true that "when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety."  ECF No. 82 at 1 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006)).  But it does not follow from these principles that a court's consideration of its own jurisdiction is limited to allegations in the original complaint, as opposed to an amended one.  Rather, "a federal court always has jurisdiction to determine its own jurisdiction," *United States v. Ruiz*, 536 U.S. 622, 628 (2002), and may—consistent with that authority—grant leave to amend in service of determining whether jurisdiction exists, *see St. Francis Med. Ctr. v. Sullivan*, 962 F.2d 1110, 1117 (3d Cir. 1992) ("[T]his court has been liberal

6

in exercising its discretion to permit such amendments to be made in an attempt to cure defective allegations of jurisdiction."). Thus, while the basis of jurisdiction must "have existed at the time the complaint was originally filed," a plaintiff may, in appropriate circumstances, make that showing in an amended pleading. *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 887 (3d Cir. 1992).

Caselaw thus confirms that a court may grant leave to amend deficient allegations of standing. Nearly fifty years ago in *Warth v. Seldin*, the Supreme Court explained that in considering a challenge to allegations of standing "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." 422 U.S. 490, 501 (1975). Consistent with *Warth*, the Third Circuit has repeatedly held that district courts have the authority to grant leave to amend allegations of standing—even after the district court has conclusively ruled that the allegations in the original complaint are insufficient. *See Doherty v. Rutgers Sch. of L.-Newark*, 651 F.2d 893, 898 n.6 (3d Cir. 1981) (district court properly provided opportunity to amend complaint before dismissing for lack of standing); *Newark Branch, NAACP v. Town of Harrison, N.J.*, 907 F.2d 1408, 1417–18 (3d Cir. 1990) (district court abused its discretion when it declined to exercise its discretion over a motion for leave to amend after dismissing complaint for lack of standing); *Potter v. Cozen & O'Connor*, 46 F.4th 148, 158 (3d Cir. 2022) (same). Accordingly, district courts within the Third Circuit may grant leave to amend where standing is disputed or insufficiently pleaded. *See, e.g.*, *Access 4 All, Inc. v. 539 Absecon Blvd., L.L.C.*, No. 05-5624 (FLW), 2006 WL 1804578, at *2 (D.N.J. June 26, 2006) (denying motion to dismiss for lack of standing and granting leave to amend); *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320, at *6 (E.D. Pa. June 14, 2012) (granting leave to amend

after dismissing for lack of standing); *see also Associated Builders & Contractors of W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, No. 20-1933, 2022 WL 889891, at *6 (W.D. Pa. Mar. 25, 2022) (considering amended allegations of standing) (Hardy, J.).

The non-binding cases that ICS relies on are not to the contrary. For example, *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1244–45 (10th Cir. 2005), supports this Court's jurisdiction to grant leave to amend. *See* ECF No. 82 at 5 (citing *Cunningham*). Far from holding that a court's jurisdictional inquiry is limited to the original complaint, the Tenth Circuit there held that it was the allegations in an amended complaint that revealed a jurisdictional defect (even though jurisdiction appeared appropriate based on earlier pleadings). *Cunningham*, 427 F.3d at 1244–45. And in doing so, the Court tacitly approved of the magistrate judge's decision to conclusively resolve the jurisdictional question at issue only after it gave the plaintiffs an opportunity to amend their jurisdictional allegations. *Id.* at 1244 ("It was for the purpose of providing these necessary jurisdictional facts that plaintiffs were directed to file a second amended complaint. When plaintiffs were unable to provide those facts, the magistrate judge properly concluded that the court lacked jurisdiction over the action.").

ICS also relies on three district court decisions denying plaintiffs leave to amend their allegations of standing, but these are likewise consistent with this Court's holding that it has jurisdiction to rule on Mr. Lezark's motion for leave to amend. *See* ECF No. 82 at 7 (discussing *Arrow Drilling Co. v. Carpenter*, No. 2:02-CV-09097, 2003 WL 23100808, at *5 (E.D. Pa. Sept. 23, 2003), *aff'd*, 125 F. App'x 423 (3d Cir. 2005), *Cramer v. Cecil Baker & Partners, Inc.*, No. 19-1503, 2019 WL 2774181, at *2 (E.D. Pa. July 1, 2019), and *Slaughter v. Nat'l Sec. Agency*, No. 15-5047, 2015 WL 7180511, at *2 (E.D. Pa. Nov. 16, 2015)). Each case applies the rule that a plaintiff "may not amend the complaint to substitute a new plaintiff in order to cure a lack of

jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists." *Arrow*, 2003 WL 23100808, at *5; *see also Cramer*, 2019 WL 2774181, at *2; *Slaughter*, 2015 WL 7180511, at *2. That rule makes sense. In the parlance of Article III, the jurisdictional inquiry generally turns on whether there is a "Case" or "Controversy" between the parties named in the complaint because the inquiry goes to whether *the plaintiff* has a "personal stake" in the outcome. *TransUnion*, 141 S. Ct. at 2203 (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). An amendment that would change the parties to an action therefore cannot—as a matter of law— demonstrate that there was jurisdiction between the parties to the original complaint at the time it was filed. *See Berkshire Fashions*, 954 F.2d at 887. While a court properly lacks the authority to allow such an amendment, that is not what Mr. Lezark is asking for here. Instead, he simply wants to add allegations about the injury he himself suffered, to show that there was a valid jurisdictional basis for his claims *at the time* he filed his original complaint—even if he may not have sufficiently alleged that basis *in* his original complaint. Considering such an amendment—and granting it if appropriate—is within this Court's authority. *See Warth*, 422 U.S. at 501.

The remaining cases ICS relies on are inapplicable because they do not address whether a party may seek leave to amend jurisdictional allegations. Instead, they concern judgments confirming arbitration awards or dismissing an action that were void due to a lack of jurisdiction. *See* ECF No. 82 at 2–5 (discussing *Brown v. Francis*, 75 F.3d 860, 864–65 (3d Cir. 1996), *Aurum Asset Managers, LLC*, 441 F. App'x at 824, and *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999)). Again, while it is true that a court may not issue a judgment without jurisdiction and instead must dismiss the complaint, that rule does not preclude the court from granting leave to amend jurisdictional allegations. *See Warth*, 422 U.S. at 501. Thus, this Court has jurisdiction to do what the Third Circuit directed: give Mr. Lezark an opportunity to file for

leave to amend.  *See* ECF No. 80-1 at 6.  That being the case, the Court will turn to the merits of Mr. Lezark's Motion for Leave to file a Second Amended Complaint.

### C.      The Court Will Grant Leave to Amend

Under the circumstances of this case, granting Mr. Lezark's Motion turns on whether his proposed Second Amended Complaint includes sufficient allegations of standing.  *See Berkshire Fashions, Inc.*, 954 F.2d at 887.  If not, amendment would be futile and granting leave to amend would therefore be improper.  *Nichols v. Sivilli*, No. 2:14-3821 (WJM), 2016 WL 3388296, at *3 (D.N.J. June 14, 2016).  If so, amendment would be appropriate because it would not be futile, Mr. Lezark has not unduly delayed seeking leave to amend, he has not repeatedly failed to cure deficient standing allegations, and allowing the amendment would not meaningfully prejudice ICS.[2]  *See Mullin*, 875 F.3d at 149.   Ultimately, the Court concludes that Mr. Lezark's proposed Second Amended Complaint includes sufficient allegations of an injury-in-fact, traceable to ICS's collection letter, and redressable by a favorable ruling.  It will therefore grant his Motion.

### 1.      Mr. Lezark Sufficiently Alleges an Injury-in-Fact

Injury-in-fact is the "first and foremost of standing's three elements."  *Spokeo*, 578 U.S. at 338 (cleaned up).  To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way."  *Id.* (quoting *Lujan*,

---

[2] The delay in this case is attributable largely to the Supreme Court's intervening decision in *TransUnion* and ICS's failure to challenge Mr. Lezark's standing until his appeal, not Mr. Lezark's conduct.  Separately, ICS argues that Mr. Lezark's amendments—in particular, his allegations that the collection letter "led [Mr. Lezark] to believe that an attorney licensed to pursue legal action in Pennsylvania may review his account and that a lawsuit may be filed against him," and that "no such attorney could review [Mr. Lezark's] account, nor could legal action or the filing of a lawsuit occur"—would impermissibly expand his substantive claims.  ECF No. 82 at 11–14;  ECF No. 79-2 ¶¶ 43–44.  The Court disagrees.  These allegations are consistent with Mr. Lezark's substantive allegations in his amended complaint, as interpreted by this Court in ruling on ICS' motion for judgment on the pleadings.  *See* ECF No. 60 at 8–9 (rejecting a similar argument).

504 U.S. at 560 n.1). And an injury is "concrete" if it is "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Crucially, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." *Id.* at 341.

Both tangible and intangible injuries may support standing. On the one hand, "traditional tangible harms"—*e.g.*, monetary loss, physical injury—"readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204. On the other, intangible harms qualify only in certain circumstances. *See id.* One way is if the intangible harm bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Thus, a plaintiff may establish standing by identifying "a close historical or common-law analogue for their asserted injury," though they need not point to "an exact duplicate." *Id.*

At the same time, Congress' judgment plays an important role because it has the authority to "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *TransUnion*, 141 S. Ct. at 2204–05. Thus, while the plaintiff must identify an injury similar in *kind* to a historically recognized harm, it need not be similar in *degree* if Congress has made it legally cognizable. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022) (citing *Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)); *Dickson v. Direct Energy, LP*, 69 F.4th 338, 346 (6th Cir. 2023); *see, e.g.*, *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017) (single unwanted telephone call sufficiently concrete, even though more calls would be needed for tort of intrusion upon seclusion to be actionable).[3]

---

[3] An informational injury may also support standing, at least where a "plaintiff alleges that she 'failed to receive . . . information' to which she is legally entitled." *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (quoting

Two cases in particular inform this Court's application of these principles to Mr. Lezark's new allegations of injury:  that ICS' collection letter made him feel "overwhelmed," caused him to seek legal advice, and contributed to his decision to file for bankruptcy, even though he did not suffer tangible monetary harm.  ECF No. 79-2 ¶¶ 43–49.  The first is *TransUnion*, 141 S. Ct. 2190, where the Supreme Court clarified what makes an intangible injury concrete.  The case involved claims by a class of consumers against a credit reporting agency under the Fair Credit Reporting Act ("FCRA").  *Id.* at 2201–02.  The class alleged that that the agency violated the FCRA by, *inter alia*, failing to ensure the accuracy of its credit reports, resulting in some class members having reports that listed them as a "potential match" to someone on a Department of Treasury List of national security threats (such as terrorists and drug traffickers).  *Id.*  The parties stipulated, however, that of the 8,185 class members, only 1,853 of them had their credit reports distributed to third parties during the salient time period.  *Id.*  After the jury found for the class, the Ninth Circuit affirmed a reduced award of around $40 million and also held that all 8,185 class members had standing to sue.  *Id.*

The Supreme Court granted certiorari on the standing issue and held that some—but not all—of the class members had standing.  *Id.* at 2203–04.  Those class members whose misleading credit reports had been sent to third parties had standing because the harm they suffered was

---

*TransUnion*, 141 S. Ct. at 2204, 2214).  Mr. Lezark argues that he has suffered such an informational injury because ICS' collection letter "denied [him] reliable information about how to address his account, and instilled false beliefs in [him], which he relied on in making decisions about his account."  ECF No. 79 at 2.  This Court disagrees.  Mr. Lezark has not pointed to any information to which he "is legally entitled," let alone a deprivation of such information. *Kelly*, 47 F.4th at 211.  For example, he has not alleged that ICS failed to include in its collection letter the information debt collectors must include in certain correspondence under 15 U.S.C. § 1692g(a), or even that its collection letter misled him about his rights under that provision.  *See id.* at 214 (to show an informational injury, plaintiff must show "the omission of information to which they claim entitlement," among other things).  Instead, he alleges that ICS included extraneous and misleading information about referring his account to an attorney.  Although such a claim can be considered under the historical-analogue framework, Mr. Lezark has not alleged a sufficient informational injury.  *Compare Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023) (holding that plaintiff had standing when inclusion of information "contrary and inconsistent" with information included regarding § 1692g(a) had the effect of "omitting the accurate information about her § 1692g(a) rights to which she is statutorily entitled").

analogous to "the reputational harm associated with the tort of defamation." *Id.* at 2208.  Although

the credit reports were merely misleading—not literally false, as would be required for the tort to

be actionable—the Court held that the similarity was sufficient to render the harm complete

because it would not require an "exact duplicate." *Id.* at 2209.  Turning to the remaining class

members whose reports had not been sent to third parties, the Court held that they had not suffered

a concrete injury because the inaccurate information in their credit files had never been

disseminated, such that they never suffered an injury analogous to reputational harm. *Id.* at 2210.

The Court noted that these class members had not alleged that the inaccurate information in their

credit files had caused them "emotional or psychological harm" such that it had no cause to

determine whether such harm would be concrete for Article III purposes. *Id.* at 2211 n.7.

       The second informative case is *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir.

2022), where the Third Circuit applied the reasoning of *TransUnion* to a case involving an alleged

data breach.  Based on the breach, the plaintiff brought claims for breach of contract and

negligence, among other common law causes of action. *Id.* at 151.  The Third Circuit held that the

plaintiff's alleged injuries from the data breach—emotional distress, related therapy costs, and

money spent on "mitigation measures like credit monitoring services," all due to the "substantial

risk of identity theft"—were sufficiently concrete. *Id.* at 155–56.  Citing the question left open in

*TransUnion*, the Third Circuit reasoned that emotional harm, such as that alleged by the plaintiff,

"could be sufficiently analogous to the tort of intentional infliction of emotional distress" to

support standing. *Id.* at 155 (citing *TransUnion*, 141 S. Ct. at 2211 n.7).

       Although the Third Circuit has not opined on whether allegations similar to Mr. Lezark's

would establish standing to sue under the FDCPA, *TransUnion* and *Clemens* support the

conclusion that his new allegations are sufficient.  First, Mr. Lezark's allegation that ICS'

collection letter made him feel "overwhelmed" is analogous to the sort of "emotional or psychological harm" actionable at common law. *See Clemens*, 48 F.4th at 155–56. In *Clemens*, for example, the Third Circuit recognized that this sort of harm could be vindicated through a common-law claim for intentional infliction of emotional distress. *Id.* And although Mr. Lezark does not reference that tort, he does point to another common-law analogue whereby a plaintiff could vindicate these sorts of emotional harms:  intrusion upon seclusion and other privacy torts. *See* Restatement (Second) of Torts § 652H (1977) ("One who has established a cause of action for invasion of his privacy is entitled to recover damages for . . . his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion. . . . .");  *see generally* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) (grounding case for widespread acceptance of privacy torts in compensating emotional harm). The common law has long recognized emotional or psychological harm as a "real" injury—whether in the context of invasion of privacy, intentional infliction of emotional distress, or some other theory—and therefore Mr. Lezark's allegation that he felt "overwhelmed" because of ICS' letter is a concrete injury for the purposes of analyzing Article III standing. *See Ballou v. Farnum*, 93 Mass. 73, 77 (1865) ("In a variety of actions founded on personal torts, and in many where no positive bodily harm has been inflicted, the plaintiff is permitted to recover for injury to the feelings and affections, for mental anxiety, personal insult, and that wounded sensibility which follows the invasion of a large class of personal rights.");  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 873 (6th Cir. 2020) (Murphy, J., concurring).

Second, Mr. Lezark's assertion that ICS' allegedly misleading collection letter contributed to his decision to file for bankruptcy is analogous to the types of detrimental reliance actionable in a common-law claim for misrepresentation. *Compare Vaughan v. Fein, Such, Kahn & Shepard,*

*P.C.*, No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) (misrepresentation tort not sufficiently analogous absent some form of reliance).  Although such a claim is only actionable upon a showing of pecuniary loss, *see* Restatement (Second) of Torts §§ 549, 552B (1977), *TransUnion* confirms that an "exact duplicate" of the historical analogue is not required for the plaintiff to carry his burden. 141 S. Ct. at 2209.  And whether Mr. Lezark's reliance was "justifiable"—as would be required for an actionable misrepresentation claim, Restatement (Second) of Torts § 537 (1977)—is immaterial at this stage, where the question is whether Mr. Lezark has identified an injury analogous to a common law *harm*, not whether he would satisfy the elements of a common law cause of action.  *TransUnion*, 141 S. Ct. at 2204.

Notably, Mr. Lezark's are the sorts of injuries that Congress sought to remedy with the FDCPA.  Congress enacted the statute "in response to 'abundant evidence of the use of abusive [or] deceptive . . . debt collection practices by many debt collectors,'" *Deutsch*, 2023 WL 2987568, at *3 (quoting 15 U.S.C. § 1692), finding that such practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"  15 U.S.C. § 1692(a).  And abusive collection practices historically included threatening, harassing, or misleading letters and other communications—some of which were severe enough to support tort liability.  *See, e.g.*, *Barnett v. Collection Serv. Co.*, 242 N.W. 25, 25 (Iowa 1932) ("coarse," "vindictive," and threatening letters supported tort claim against debt collector);  *Clark v. Associated Retail Credit Men of Wash., D.C.*, 105 F.2d 62, 63–64, 67 (D.C. Cir. 1939) (trial court should have overruled demurrer to complaint alleging that debt collector sent plaintiff several letters threatening suit and other consequences if debt remained unpaid); *Christensen v. Swedish Hosp.*, 368 P.2d 897, 898–900 (Wash. 1962) (plaintiff stated tort claim against debt collector based in part on allegations of letters threatening prosecution); *Rugg v. McCarty*, 476 P.2d 753, 754–55

(Colo. 1970) (en banc) (plaintiff stated sufficient claims for invasion of privacy and intentional infliction of emotional distress against debtor alleged to have, *inter alia*, "[r]epeatedly harassed her with numerous telephone calls and letters demanding payment"); *Watson v. Franklin Fin.*, 540 S.W.2d 186, 188 (Mo. Ct. App. 1976) (plaintiff stated claim against debt collector for intentional infliction of emotional distress based on harassing and threatening calls and letters); *Moorhead v. J. C. Penney Co.*, 555 S.W.2d 713, 714–15 (Tenn. 1977) (same); *Turman v. Cent. Billing Bureau, Inc.*, 568 P.2d 1382, 1385 (Or. 1977) (evidence at trial, which included evidence of harassing calls and letters, sufficient to support verdict against debt collector). Mr. Lezark's allegations regarding a single allegedly threatening letter may not be as severe as those cases in degree, but they are similar in kind. He has therefore alleged a harm similar in kind to a recognized common law harm that Congress made actionable under the FDCPA, and thus a concrete injury. *See Ward v. NPAS, Inc.*, 63 F.4th 576, 581 (6th Cir. 2023) (single unwanted collection call supported standing to bring FDCPA claim) (collecting cases).

In so holding, this Court acknowledges that its decision may be in tension with out-of-circuit precedent regarding the extent to which emotional or psychological harm can be a concrete injury. Several circuits have held or suggested, for example, that emotional harm is only concrete if it approaches the level of distress that was actionable at common law. *See Van Vleck v. Leikin, Ingber, & Winters, P.C.*, No. 22-1859, 2023 WL 3123696, at *6 (6th Cir. Apr. 27, 2023) ("[W]e have recognized that an allegation of *extreme* emotional distress can suffice as an injury-in-fact to confer Article III standing." (emphasis added)) (citing *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2714 (2022)); *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65–66 (2d Cir. 2021). And Mr. Lezark's allegations of emotional harm likely would not approach that

16

required to bring a successful claim for infliction of emotional distress. *See Miller v. Comcast*, 724 F. App'x 181, 182 (3d Cir. 2018) (under Pennsylvania law, tort is actionable only if plaintiff suffered "severe" emotional distress).

The Court, however, concludes that these cases read the injury-in-fact requirement too narrowly. For one thing, the Third Circuit, applying principles similar to those set forth in *TransUnion* , has consistently held that even the most seemingly insignificant injuries can support standing. *See, e.g.*, *Susinno*, 862 F.3d at 351–52; *see also Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 177 (3d Cir. 2001) ("All that the Article III's injury-in-fact element requires is 'an identifiable trifle' of harm."). And while Mr. Lezark's alleged emotional harm may not be as severe as that alleged in *Clemens*, where the plaintiff went to therapy, the court did not suggest that emotional harm must be particularly severe to be concrete. *See* 48 F.4th at 157–58. In any event, Mr. Lezark alleges more than emotional harm—he alleges consequential harm in the form of his decision to file for bankruptcy—such that emotional harm is not the sole basis for his standing to sue. *See id.* (standing was established where plaintiff suffered emotional distress and undertook mitigation measures to avoid identity theft); *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022). Further, requiring allegations of more severe emotional distress would raise its own separation-of-powers concerns by diminishing Congress' Article I authority to elevate previously nonactionable—but nevertheless real—harms to the status of a legally cognizable injury. *See TransUnion*, 141 S. Ct. at 2204–05. Unlike the courts, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 578 U.S. at 341. Thus, so long as the Congress has elevated a harm that resembles in kind a historically recognized harm—even one that may seem insignificant—it is not this Court's place to reject that policy decision made by a politically

accountable branch. *See id.* For all these reasons, the Court concludes that Mr. Lezark's allegations of relatively slight emotional or psychological harms are sufficiently concrete to support his standing to sue. *See Buchholz*, 946 F.3d at (Murphy, J., concurring).[4]

The Court therefore concludes that Mr. Lezark has sufficiently alleged that he suffered a concrete injury. That injury was particular to Mr. Lezark—the person who suffered the emotional harm and filed for bankruptcy—and was actual, not hypothetical or conjectural. Mr. Lezark's amended allegations would therefore satisfy the injury-in-fact requirement.

### 2.    Mr. Lezark Sufficiently Alleges Traceability and Redressability

An injury-in-fact alone does not establish standing—the plaintiff must further show that the injury is "fairly traceable" to the defendant's challenged conduct and is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. "Traceability means that the injury was caused by the challenged action of the defendant as opposed to an independent action of a third party." *Clemens*, 48 F.4th at 158. But-for causation and proximate causation will suffice, but so will a lesser showing of "concurrent causation" or an "indirect causal relationship." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014). Thus, a plaintiff can establish traceability even if a defendant's conduct caused—in some way—only a small part of the alleged injury. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 n.8 (3d Cir. 1990) (the "size of the injury is not germane to standing analysis" and plaintiff could sue defendant over

---

[4] In *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023), the Seventh Circuit held a plaintiff had insufficiently alleged an injury in fact despite alleging "confusion and fear" caused by a collection letter. It reasoned that intrusion upon seclusion was an insufficiently analogous tort because "it requires a particular kind of offensive intrusion" that the plaintiff had not alleged. *Id.* Respectfully, the Court finds the Seventh Circuit's reasoning unpersuasive because *TransUnion* calls for the plaintiff to identify an analogous *harm*, and an "offensive intrusion" is better understood as the actionable *conduct* of the defendant. *TransUnion*, 141 S. Ct. at 2204 ("Th[e] inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."). Furthermore, even assuming that Mr. Lezark needed to show something analogous to an offensive intrusion, he would only have to show something analogous in kind, not degree. *See supra* at 11. Here, Mr. Lezark's emotional harm due to an empty threat of legal action is sufficiently similar in kind to the sort of collection practices that gave rise to the FDCPA that it supports Mr. Lezark's standing to sue. *See supra* at 13–16.

polluted waterway even if other, unnamed parties contributed to the pollution).  Redressability is "closely related to traceability, and the two prongs often overlap."  *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (internal quotation marks omitted).

Mr. Lezark's allegations satisfy these two elements.  As to his emotional harm—that he felt "overwhelmed"—Mr. Lezark alleged that it was caused by ICS' letter, which instilled in him the "false belief" that he might be sued over his debt.  ECF No. 79-2 ¶¶ 43–45.  Although some courts have found emotional harm insufficiently traceable to FDCPA violations where the harm was attributable to the plaintiffs' underlying financial distress, that is not the case here.  *See Garland v. Orlans, PC*, 999 F.3d 432, 441 (6th Cir. 2021).  Rather, Mr. Lezark's allegations plausibly establish that at least some of the emotional distress he experienced was attributable to the false belief that he may be sued, as contrasted with concerns about his finances more generally or that he would, for example, lose his home.  *Cf. id.*  Similarly, although Mr. Lezark concedes that ICS' collection letter did not conclusively cause him to file for bankruptcy, he asserts that it did "help push" him to do so, which is a sufficient causal relationship to support standing.  ECF No. 79-2 ¶¶ 46–48;  *see Powell*, 913 F.2d at 72 n.8;  *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("[The plaintiff] has standing to pursue his claims so long as even a small part of the injury is attributable to [the defendant].  And construing the facts in the light most favorable to [the plaintiff], we can't say that [the defendant] caused *none* of [the plaintiff's] damage.").  Mr. Lezark's injuries are therefore traceable to ICS' collection letter.  They are also redressable by a favorable judicial decision because he would be compensated with damages.

\*\*\*

The Court, accordingly, finds that Mr. Lezark's proposed Second Amended Complaint contains sufficient allegations of standing such that granting leave to amend would not be futile.

Because leave to amend should be "freely give[n]" when "justice so requires," the Court will grant Mr. Lezark's Motion for Leave to File a Second Amended Complaint.  *See Mullin*, 875 F.3d at 149.

**IV.    Conclusion**

For the foregoing reasons Mr. Lezark's Motion is **GRANTED**.  He shall file his Second Amended Complaint forthwith, no later than July 20, 2023.

DATED this 18th day of July, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record