IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY LEZARK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>I.C. SYSTEM, INC.,<br><br>Defendant. | 2:20-CV-00403-CCW |

**OPINION AND ORDER**

Before the Court is a Motion for Class Certification filed by Plaintiff Jeffrey Lezark, seeking to certify a class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). ECF No. 129. For the following reasons, the Court will **DENY** the Motion.

**I.     Background**

This putative class action case arises from a debt collection letter (the "540 Letter") that ICS sent to Mr. Lezark seeking to collect on a medical debt. ECF No. 91. The 540 Letter stated that "[i]f you fail to contact us to discuss payment of this account, our client has authorized us to pursue additional remedies to recover the balance due, including referring the account to an attorney." *Id.* ¶ 17. Mr. Lezark alleges that in sending the 540 Letter, ICS violated §§ 1692e and 1692f of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by implying that legal action was possible to collect the debt, when it was not. *Id.* ¶¶ 50, 75.

The Court previously ruled that Mr. Lezark's Second Amended Complaint plausibly alleges his Article III standing, ECF No. 90, and states a plausible claim for violation of the FDCPA, ECF No. 108. ICS filed an Answer, ECF No. 109, and the Court then ordered the parties

to submit briefing on Mr. Lezark's anticipated motion to send a questionnaire (the "Claim Form Questionnaire") to putative class members who had also received a 540 Letter to evaluate their standing in light of the United States Court of Appeals for the Third Circuit's decision in *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023). ECF No. 115. After considering the parties' briefing on that issue, the Court authorized distribution of the Claim Form Questionnaire to putative class members so that Mr. Lezark could collect information regarding their standing. ECF Nos. 119, 121, 123, 127. The Claim Form Questionnaire asked each respondent what their individual experience was upon reading the 540 Letter. ECF No. 120-1. The form further advised "If you read the letter, please complete the claim form. If you did not read the letter, you do not need to respond to this questionnaire." *Id.* Specifically, the Claim Form Questionnaire asked respondents to check boxes adjacent to the following five responses, "if [they] experienced any of the following after reading" the portion of the 540 Letter suggesting that their debt could be referred to an attorney:

1. I felt anxious, overwhelmed, or stressed because I believed that I could be subject to legal action or that my debt could be referred to an attorney.

2. I contacted an attorney or some other person because I believed that I could be subject to legal action or that my debt could be referred to an attorney.

3. I contacted [ICS] because I believed that I could be subject to legal action or that my debt could be referred to an attorney.

4. I made a payment on my account because I believed that I could be subject to legal action or that my debt could be referred to an attorney.

5. I experienced some other event, or engaged in some other conduct, after reading the letter that was sent to me. Please explain.

*Id.* After receiving completed Claim Form Questionnaires from a number of putative class members,[1] Mr. Lezark filed the instant Motion for Class Certification. ECF No. 129. He seeks certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) of a class of individuals (the "Proposed Class") consisting of:

> All individuals [(i)] in the state of Pennsylvania who, [(ii)] within the applicable statute of limitations, [(iii)] received a letter from Defendant in which Defendant claimed it was authorized to refer a medical debt to an attorney, [(iv)] incurred said debt from a medical provider that entered into a contract with Defendant in which the provider elected [NLAR] and/or litigation referral, and [(v)] incurred such debt for personal, family, and/or household purposes.

ECF No. 130 at 4. The Proposed Class consists of at least 15,083 individuals. *Id.* at 12.

Mr. Lezark also seeks certification of an alternative class (the "Proposed Alternative Class") if the Court determines that the Proposed Class cannot be certified. The Proposed Alternative Class consists of "[a]ll individuals who: signed, dated, and returned the Claim Form Questionnaire; checked the first, second, third, fourth, and/or fifth box on the Claim Form Questionnaire; and did not indicate that they failed to receive or read the 540 Letter." *Id.* at 4. There are at least 747 individuals in the Proposed Alternative Class. *Id.* at 12.

Mr. Lezark argues that both the Proposed Class and the Proposed Alternative Class satisfy all the requirements for certification under Rules 23(a) and 23(b)(3). *Id.* at 5–15. ICS filed an Opposition to Mr. Lezark's Motion for Class Certification, ECF No. 136, and Mr. Lezark filed a Reply in further support, ECF No. 137. At the Court's request, ICS also filed a Surreply.[2] ECF No. 141. The Motion is thus fully briefed and ripe for resolution.

---

[1] The Claim Form Questionnaire was sent to a total of 15,083 putative class members, and 786 Claim Form Questionnaires were returned. ECF No. 130 at 3.

[2] ICS originally filed a motion for leave to file a Surreply, ECF No. 138, which the Court granted, ECF No. 139. But ICS did not file its Surreply until the Court requested that it do so in a subsequent Order. ECF No. 140.

**II.     Legal Standard**

A lawsuit may only be certified as a class action if the requirements of Federal Rule of Civil Procedure 23 are satisfied. *See Reinig v. RBS Citizens*, N.A., 912 F.3d 115, 124–25 (3d Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). "Class certification is proper only if the district court is satisfied, 'after a rigorous analysis,' that the plaintiffs 'established each element of Rule 23 by a preponderance of the evidence.'" *Id.* at 125 (quoting *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 (3d Cir. 2012)). The analysis proceeds in two steps. *Id.* First, the court must assess whether plaintiff has satisfied the prerequisites of Rule 23(a), and then it must determine whether plaintiff has met the requirements of either Rule 23(b)(1), (2), or (3). *See id.* at 124–25; *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016).

Mr. Lezark seeks class certification pursuant to Rule 23(b)(3). ECF No. 129. As a threshold condition to Rule 23(b)(3) certification, a plaintiff must establish that the proposed class is "ascertainable," meaning that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). Furthermore, Rule 23(b)(3) certification "requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Marcus*, 687 F.3d at 591 (quotation omitted). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Huber*, 84 F.4th at 156 (quoting *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019)). "But the presence of individual questions does not *per se* rule out a finding of predominance." *Id.* (internal quotations omitted). "The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the

merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 409 (3d Cir. 2015). "[T]here is substantial overlap in the superiority and predominance inquiries." *Kelly v. RealPage Inc.*, 47 F.4th 202, 215 n.11 (3d Cir. 2022).

### III.    Discussion

ICS does not contest whether the class certification requirements of Rule 23(a) are met but does argue that neither the Proposed Class nor the Proposed Alternative Class satisfy Rule 23(b)(3)'s predominance requirement. ECF No. 136 at 11–18. Specifically, ICS asserts that under the United States Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Court is compelled "to affirmatively determine that each putative class member has Article III standing before awarding that class member damages," ECF No. 136 at 14, and that determining each Proposed Class and/or Proposed Alternative Class member's standing in this case would necessarily "require individualized rulings that would violate Rule 23(b)(3)," *id.* at 12. Mr. Lezark first contends that the Proposed Class can be certified under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), without the need for individualized rulings on each Proposed Class members' standing because each Proposed Class member suffered an injury "in precisely the form [that the FDCPA] was intended to guard against." ECF No. 130 at 14 n.3. Alternatively, Mr. Lezark argues that the Proposed Alternative Class members have standing under the United States Court of Appeals for the Third Circuit's decision in *Huber v. Simon's Agency, Inc.*, and therefore the Proposed Alternative Class can be certified without violating Rule 23(b)(3)'s predominance requirement. *Id.* at 14–15. Resolving the predominance issue at the heart of ICS's Opposition thus requires outlining the contours of Article III standing as it applies to this case.

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S.

149, 157 (2014). Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'" *TransUnion*, 594 U.S. at 424 (quoting *Am. Legion v. Am. Humanist Assn.*, 588 U.S. 29, 87 (2019)). A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–62 (1992). "The party invoking federal jurisdiction bears the burden of establishing [Article III standing]." *Id.* at 561. And they must do so "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Thus, "[i]n response to a summary judgment motion . . . the plaintiff . . . must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true,"[3] and ultimately a plaintiff's standing "must be supported adequately by the evidence adduced at trial" before a federal court can grant any relief. *See id.* (cleaned up). In the class action context, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431.

       Injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (cleaned up). To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). And an injury is "concrete" if it is "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Importantly, a plaintiff does not "automatically satisf[y] the injury-in-

---

[3] While there is no summary judgment motion currently pending before the Court, the evidentiary showing that will be required at summary judgment is relevant to the predominance issue.

6

fact requirement whenever a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." *Id.* at 341. Rather, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 414.

Both tangible and intangible injuries may support standing. On the one hand, "traditional tangible harms"—e.g., monetary loss, physical injury—"readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425. On the other, intangible harms qualify only in certain circumstances. *See id.* One way is if the intangible harm bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Thus, a plaintiff may establish standing by identifying "a close historical or common-law analogue for their asserted injury," though they need not point to "an exact duplicate." *Id.*

With this framework in mind, the court will first evaluate Mr. Lezark's argument that the Proposed Alternative Class has standing under *Huber*, and then turn to his argument that the Proposed Class has standing under *Havens*.

### A. The Proposed Alternative Class Cannot be Certified Under *Huber*

Mr. Lezark argues that every member of the Proposed Alternative Class has standing under the Third Circuit's 2023 decision in *Huber v. Simon's Agency, Inc.*, and therefore there is no predominance concern that would prevent certification of the Proposed Alternative Class under Rule 23(b)(3). ECF No. 130 at 14–15; ECF No. 137 at 2–5. Like this case, *Huber* involved a collection letter that allegedly violated § 1692e of the FDCPA. There, the Third Circuit held that the named plaintiff who received the letter had standing because the alleged violation of § 1692e had an "apt analogue" in the common law tort of fraudulent misrepresentation, and the plaintiff had sufficiently "identified both an allegedly deceptive communication and specific harmful action and inaction she took as a result of that communication." *Huber*, 84 F.4th at 150. But when it

7

came to the issue of class certification, the Third Circuit found that Rule 23(b)(3)'s predominance requirement was not satisfied and vacated the District Court's order certifying a class. *Id.* at 151–58.

Specifically, the *Huber* court recognized that "[t]o recover damages . . . unnamed class members would have to submit individualized evidence of their standing." *Id.* at 157 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019)); *see also TransUnion*, 594 U.S. at 431 ("Every class member must have Article III standing in order to recover individual damages."); *Lujan*, 504 U.S. at 561 (stating that plaintiffs' standing "must be supported adequately by the evidence adduced at trial") (quotation omitted). And the court acknowledged that "predominance concerns can arise when unnamed class members must submit individualized evidence to satisfy standing and recover damages." *Huber*, 84 F.4th at 156. Ultimately, the Third Circuit concluded there was a "lack of evidence in the record indicating how many members of Huber's class [were] likely to have standing and how burdensome that showing [would] be for both the District Court and the parties," and remanded "for the District Court to decide whether Huber's proposed class [was certifiable] notwithstanding the individualized evidence class members must submit to demonstrate standing and recover damages." *Id.* at 157–58. The Third Circuit provided some guiding principles for the District Court to consider on remand, stating that "[i]f the Court surmises that few class members will be able to show they undertook the kind of detrimental action or inaction required for standing or that it will be extraordinarily difficult to identify those who did, then Huber's proposed class is not sufficiently cohesive to warrant adjudication by representation." *Id.* at 157 (cleaned up). On the other hand, the court opined that "if many class members appear likely to satisfy standing or if there is a plausible straightforward

8

method to sort them out at the back end of the case, then the class might appropriately proceed as it is currently defined." *Id.* at 157–58 (quotations omitted).

Turning to the instant case, the Court has already concluded that the harms alleged by Mr. Lezark in his Second Amended Complaint—emotional distress and making the decision to file for bankruptcy—are the type of harms that bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and therefore sufficiently establish Article III standing as to Mr. Lezark at this stage of these proceedings.[4] *Lezark v. I.C. Sys., Inc.*, No. 2:20-CV-00403-CCW, 2023 WL 4571457, at *6 (W.D. Pa. July 18, 2023) (quoting *TransUnion*, 594 U.S. at 425); *see also Huber*, 84 F.4th at 148 (stating that "emotional harm" resulting from reliance on a misleading debt collection letter is sufficiently concrete to convey standing). In seeking class certification, Mr. Lezark argues that because the Proposed Alternative Class members have all identified injuries similar to his own, they are "likely to satisfy standing" under *Huber*, and therefore there is no predominance issue. ECF No. 137 at 4 (citing *Huber*, 84 F.4th at 157). Specifically, the Claim Form Questionnaires Mr. Lezark relies upon identify 662 Proposed Alternative Class members who reported feeling "anxious, overwhelmed, or stressed" after receiving the 540 Letter because they believed that they could be subject to legal action or their debt could be referred to an attorney.[5] ECF Nos 130-12, 131. The other Proposed Alternative Class members reported that in response to the 540 Letter they either contacted an attorney and/or ICS because they believed they could be subjected to legal action, made a payment on their account with ICS, or experienced some other adverse event. *Id.*

---

[4] The Court also concluded that Mr. Lezark had not suffered an "informational injury" sufficient to convey standing. *Lezark*, 2023 WL 4571457, at *6 n.3.

[5] The Court reached the total of 662 by reviewing Exhibit K to the instant Motion and calculating the sum total of all Alternative Class members who checked the first box on the Claim Form Questionnaire, less the 11 Alternative Class members for whom it was unclear if the Claim Form Questionnaire had been signed by someone with the authority to do so. *See* ECF Nos. 130-12, 131.

For the same reasons that Mr. Lezark's Second Amended Complaint plausibly alleges his standing, the Proposed Alternative Class Members' responses to the Claim Form Questionnaire make a *prima facie* showing of their standing. *See Lezark*, 2023 WL 4571457, at *5–10. However, the question at the class certification stage is not whether putative class members can make an initial showing of standing. The question is whether it is "likely" that they can establish—through summary judgment and at trial—that they have standing without the need for the Court to resolve "individualized questions . . . [that] will overwhelm common questions." *Huber*, 84 F.4th at 156–57. This is no small concern. And in this case, the Court concludes that the Proposed Alternative Class members cannot clear this hurdle.

The Proposed Alternative Class members bear the ultimate burden of establishing their standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Here, where the Proposed Alternative Class members' standing is premised on suffering emotional distress and/or taking particular actions in response to the 540 Letter, the evidence required to survive any summary judgment motions and then prevail at trial will be necessarily individualized and highly specific to each Proposed Alternative Class member. Thus, determining whether the 747 Proposed Alternative Class members will ultimately be able to establish standing sufficient to warrant a damages award will inevitably be "extraordinary difficult." *Huber*, 84 F.4th at 157. For example, determining at trial whether a particular member of the Proposed Alternative Class suffered emotional distress because they read the 540 Letter would necessarily entail the development of a considerably more robust factual record than the one-sentence response provided in the Claim Form Questionnaire, and could ostensibly involve deposition testimony, direct and cross examination, and the production of documents and medical records. Multiplied across 747 Proposed Alternative Class members,

determining each individual's standing will require resolving myriad "individualized questions . . . [that] will overwhelm common questions" regarding ICS's liability. *Huber*, 84 F.4th at 156. And Mr. Lezark has not offered a "plausible straightforward method" to sort out which Proposed Alternative Class members have standing at the back end of the case. *Id.* at 158. Given the nature of the Proposed Alternative Class members' alleged injuries, the Court doubts that there is any such method that can be characterized as "straightforward." Accordingly, the Court concludes that the Proposed Alternative Class cannot be certified under Rule 23(b)(3).

Because Mr. Lezark has not met his burden of establishing that the Proposed Alternative Class can satisfy Rule 23(b)(3)'s predominance requirement, it need not address the other requirements for class certification contained in Rules 23(a) and 23(b)(3).

### B. The Court Declines to Extend *Havens* to Find That the Proposed Class Has Standing

With respect to the larger Proposed Class, Mr. Lezark argues that the United States Supreme Court's 1982 decision in *Havens Realty Corp. v. Coleman* conclusively establishes each Proposed Class member's standing such that there is no need for individualized determinations of standing, and therefore there is no predominance issue that would prevent class certification. ECF No. 130 at 13–14; ECF No. 137 at 1. Specifically, Mr. Lezark argues that *Havens* requires the Court to find that the approximately 15,000 members of the Proposed Class have standing simply because they received the 540 Letter, without any evidence that they read it, let alone suffered any downstream harm as a result. *Id.*

In *Havens*, the Supreme Court considered whether a "tester" plaintiff had standing to assert a claim for a violation of § 804(d) of the federal Fair Housing Act ("FHA"). 455 U.S. at 373–74. That statute makes it "unlawful for an individual or firm . . . [t]o represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection,

11

sale, or rental when such dwelling is in fact so available." *Id.* at 373 (quoting 42 U.S.C. § 3604(d)). The plaintiff in *Havens*, who was African American, alleged that the defendant violated the FHA by falsely telling her "on four different occasions that apartments were not available . . . while informing white testers that apartments were available." *Id.* at 374. The Supreme Court held that the plaintiff had standing to sue for a violation of the FHA, even though she "may have approached the [defendant] fully expecting that [she] would receive false information, and without any intention of buying or renting a home." *Id.* As the Supreme Court explained, because the plaintiff had been "the object of a misrepresentation made unlawful under [the FHA]," she had "suffered injury in precisely the form the statute was intended to guard against, and therefore ha[d] standing to maintain a claim." *Id.* at 373–74.

Mr. Lezark argues that the same logic underlying *Havens* supports the Proposed Class members' standing because "a consumer 'who has been the object of a misrepresentation made unlawful under [the FDCPA] has suffered injury in precisely the form the [FDCPA] was intended to guard against." ECF No. 130 at 13–14 (quoting *Havens*, 455 U.S. at 374). ICS urges the Court to reject this theory of the Proposed Class members' standing because it is in tension with the Supreme Court's more recent rejection of the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). Ultimately, however, the Court need not resolve any such tension because *Havens* is distinguishable from the instant case.

*Havens* was a case brought under the FHA, not the FDCPA, and involved the type of false statement the FHA specifically made unlawful—a representation to the plaintiff, on account of her race, that housing was unavailable when in fact it was available. *Havens*, 455 U.S. at 373–74.

While the Third Circuit has not spoken on *Havens*' applicability to FDCPA cases, other Circuits have distinguished *Havens* and declined to extend it to the FDCPA context. For example, in rejecting the same theory of standing pressed by Mr. Lezark here, the Eleventh Circuit Court of Appeals correctly observed that "the [FHA] does not seek to vindicate some amorphous interest in receiving [truthful] information. Instead, it protects the weighty interest in not being subjected to racial discrimination, which can inflict a concrete injury on anyone who 'personally' experiences it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020) (declining to apply *Havens* to a FDCPA case); *see also Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 338 (7th Cir. 2019) (Barrett, J.) (declining to apply *Havens* to a FDCPA case for the same reason as *Trichell*); *TransUnion*, 594 U.S. 413 at 426–27, 441–42 (citing *Trichell* and *Casillas* with approval). In other words, the injury suffered by the tester plaintiff in *Havens* "is obviously neither the harm [the Proposed Class members] claim[] nor the one that the [FDCPA] protects against," *Casillas*, 926 F.3d at 338, because—unlike Mr. Lezark and the Proposed Class members—the plaintiff in *Havens* was not just given false information, but suffered a concrete injury in the form of racial discrimination prohibited by the FHA. Thus, contrary to Mr. Lezark's contention, it is not clear that *Havens* "has direct application in this case."[6] ECF No. 130 at 14 n.2 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). Indeed, the Supreme Court itself recently cautioned, albeit on the separate issue of organizational standing, that "*Havens* was an unusual case" and it "has been careful not to extend the *Havens* holding beyond its context." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). Here, the Court will follow that

---

[6] Apparently recognizing that *Havens*' applicability in this case is a stretch, Mr. Lezark spends less than two pages arguing for the Court to apply *Havens* before pivoting to argue for certification of the smaller Proposed Alternative Class under *Huber*. *See* ECF Nos. 130 at 13–14, 137 at 1.

13

example and decline to extend *Havens* to find that the 15,000-plus Proposed Class members in this FDCPA case all have Article III standing simply because they received the 540 Letter.

Absent having standing under *Havens*, there is no other evidence in the record that suggests that the approximately 15,000 Proposed Class members are likely to have standing (other than the evidence applicable to the Proposed Alternative Class members which the Court has already found insufficient). Accordingly, like the Proposed Alternative Class, the Proposed Class does not satisfy Rule 23(b)(3)'s predominance requirement and cannot be certified. *See Huber*, 84 F.4th at 157–58 (vacating class certification order due to "the lack of evidence in the record indicating how many members of [the] class [were] likely to have standing.").

### IV. Conclusion

For the reasons set forth above, it is **HEREBY ORDERED** that Plaintiff Jeffrey Lezark's Motion for Class Certification, ECF No. 129, is **DENIED**.

DATED this 29th day of May, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record